UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,   )
                                     )
            Plaintiff,               )
v.                                    )
                                     )
EDMOND L. LONERGAN and GREEN PLANET   )
GROUP, INC.,                          )
                                     )
            Defendants.               )
_____)

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges as follows:

**I.   INTRODUCTION**

1. From no later than March 2012 through February 2013, Defendants Edmond L. Lonergan and Green Planet Group, Inc. ("GNPG") engaged in a fraudulent market manipulation scheme involving GNPG's stock. The scheme involved payment of an illegal bribe to a purportedly corrupt promoter so the promoter and his purported buying group would purchase shares of GNPG in the open market.

2. Defendants engaged in this scheme in an effort to generate the appearance of market interest in GNPG, induce public purchases of the company's stock, and artificially increase the stock's trading price and volume.

3. Unbeknownst to Defendants, the purportedly corrupt promoter was a witness cooperating with the FBI.

4. As a result of the conduct described in this Complaint, Defendants violated Section 10(b) and Rules 10b-5(a) and (c) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a) and (c). Unless restrained and enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

5. The Commission therefore respectfully requests the Court enter an order: (i) permanently restraining and enjoining Defendants from violating the federal securities laws; (ii) directing Defendants to pay civil money penalties; and (iii) imposing penny stock and officer-and-director bars against Lonergan.

## II.   DEFENDANTS

6. Lonergan, age 69, resides in Scottsdale, Arizona. During the relevant time period, he was GNPG's CEO and president.

7. During the relevant time period, GNPG was a Nevada corporation with principal offices located in Scottsdale, Arizona. The company purported to be an energy conservation enterprise engaged in research and development of products and services that enhance the environment. Its common stock was quoted on OTC Link operated by OTC Markets Group, Inc. under the symbol "GNPG" at all times relevant to this action. GNPG filed a Form S-1 with the Commission, which was declared effective as of November 2006, and the company thereby became subject to the reporting obligations of Section 15(d) of the Exchange Act.

8. GNPG's stock is a "penny stock" as defined by the Exchange Act. During the relevant time period, the stock traded at less than two cents per share and did not meet any of the exceptions to penny stock classification pursuant to Section 3(a)(51) and Rule 3a51-1 of the Exchange Act. For example: (a) the stock did not trade on a national securities exchange; (b) the stock was not an "NMS stock," as defined in 17 C.F.R. § 242.600(b)(47); (c) GNPG did not have

net tangible assets (*i.e.*, total assets less intangible assets and liabilities) in excess of $5,000,000; and (d) GNPG did not have average revenue of approximately $6,000,000 for the last three years.  *See* Exchange Act, Rule 3a51-1(g).

### III.     JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to Sections 21(d) and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa(a).

10. The Court has personal jurisdiction over Defendants, and venue is proper in the Southern District of Florida, because a substantial part of Defendants' acts and transactions constituting violations of the Exchange Act occurred in this District.  For example, during the relevant time period, Lonergan regularly communicated with the cooperating witness via telephone, email and text message, all while the cooperating witness was located in Broward County. In addition, Lonergan sent multiple stock certificates and draft press releases to the cooperating witness in Broward County as part of the scheme.  Furthermore, the FBI made the open market purchases of GNPG's stock while located in Broward County.

11. In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and the mails.

## IV.     THE FRAUDULENT SCHEME

12.     During a telephone conversation on March 30, 2012, Lonergan and the cooperating witness agreed to engage in a fraudulent market manipulation scheme involving GNPG stock. They agreed the cooperating witness and his purported buying group would purchase GNPG stock in the open market in order to artificially increase the volume and price of the company's stock.

13.     Lonergan told the cooperating witness that "for something around two to three million shares of buying" the stock would "go from a half a cent to maybe two to three cents." Lonergan and the cooperating witness discussed that Lonergan would pay the cooperating witness and his buying group an inducement payment of one share of GNPG stock for every three to five shares purchased.

14.     In furtherance of the scheme, Lonergan and the cooperating witness also discussed that Lonergan would arrange for GNPG to issue timed press releases, and Lonergan agreed to provide advance copies of the press releases to the cooperating witness.

15.     A few days later, during a telephone conversation on April 3, 2012, the cooperating witness told Lonergan he would show his "guys" the advance press releases and then "front run the news" whereby he would generate volume in the stock before GNPG issued the press releases to the public.

16.     On April 9, 2012, the cooperating witness sent Lonergan via Federal Express two stock certificates totaling 1 million restricted shares of GNPG to have them "freed up" as part of his inducement payment, which the parties had discussed during their telephone conversation on April 3. Lonergan later arranged to mail the free trading shares to the cooperating witness as the inducement payment.

17.  On April 16, 2012, Lonergan arranged for his secretary to send the cooperating witness an email (on which Lonergan was copied), attaching two GNPG press releases to be issued on April 18, 2012.

18.  The next day, on April 17, 2012, the FBI purchased a total of 125,600 shares of GNPG stock on the open market for a total principal cost of approximately $1,363. The FBI's purchases constituted approximately 7% of the volume of GNPG stock for the day.

19.  On April 18, 2012 and again on April 20, 2012, GNPG issued press releases to the public that were nearly identical to the ones provided to the cooperating witness on April 16.

20.  Several months later, on October 31, 2012, Lonergan emailed the cooperating witness, asking whether the cooperating witness was "available to help Green Planet now – we have lots of good stuff going on now." Subsequently, Lonergan and the cooperating witness resumed the manipulation scheme. During a December 31, 2012 telephone conversation, Lonergan told the cooperating witness he had significant news releases coming out and would like to see GNPG's share price rise to "over three cents into the five cent range, if that were possible – a little bit higher." Lonergan was seeking the cooperating witness's help in getting the stock price to that level.

21.  Lonergan estimated that four to five million shares of GNPG stock would need to be purchased in order to achieve that price increase. Lonergan and the cooperating witness again discussed coordinating the issuance of GNPG press releases with the buying and that Lonergan would provide the cooperating witness and his buying group with advance copies of the news.

22. During a telephone conversation on January 7, 2013, the parties discussed that Lonergan would be "unloading" about 987,000 shares of GNPG stock he owned. He told the cooperating witness he wanted the share price to reach a minimum of a "point and a half to two" before he sold his shares.

23. Lonergan and the cooperating witness also discussed that the cooperating witness would purchase $50,000 worth of GNPG stock on the open market. They agreed on an inducement payment of "one for three" whereby the cooperating witness and his buying group would receive one share of stock for every three shares of GNPG stock they purchased. The cooperating witness further stated he wanted 1 million shares of GNPG free trading stock and possibly some restricted stock as part of the inducement payment. On January 22, 2013, Lonergan arranged to mail the cooperating witness 1 million shares of GNPG stock toward the inducement payment.

24. Two days later, on January 24, 2013, Lonergan emailed the cooperating witness a draft press release to be issued the following day. Accordingly, that same day, the FBI purchased 240,000 shares of GNPG on the open market for a total principal cost of approximately $2,232.

25. The next day, on January 25, 2013, GNPG issued a press release to the public that was nearly identical to the one Lonergan provided to the cooperating witness the day before.

26. That same day, the FBI purchased an additional 200,000 shares of GNPG stock in the open market for a total principal cost of approximately $2,060. The FBI's purchases constituted approximately 39% and 6% of the volume of trading in GNPG for January 24 and 25, respectively.

27. On February 4, 2013, Lonergan emailed the cooperating witness another draft news release that GNPG planned to issue the next day. However, the cooperating witness responded that he would be "out of commission for a while" due to upcoming surgery. Ultimately, there were no further transactions.

## COUNT I

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

28. The Commission repeats and realleges Paragraphs 1 through 27 of its Complaint.

29. From no later than March 2012 through February 2013, Defendants directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly, willfully or recklessly employed any device, scheme or artifice to defraud in connection with the purchase or sale of any security.

30. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a).

## COUNT II

### Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act

31. The Commission repeats and realleges Paragraphs 1 through 27 of its Complaint.

32. From no later than March 2012 through February 2013, Defendants directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly, willfully or recklessly engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon any person in connection with the purchase or sale of any security.

33. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(c) of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(c).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find Defendants committed the violations alleged, and:

### I.

### Permanent Injunction

Issue a Permanent Injunction restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating the federal securities laws alleged in this Complaint.

### II.

### Penalties

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### III.

### Penny Stock Bar

Issue an Order, pursuant to Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6), barring Lonergan from participating in any future offering of a penny stock.

### IV.

### Officer-and-Director Bar

Issue an Order, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), barring Lonergan from acting as an officer or director of any issuer that has a class of securities

registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

## V.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VI.

## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action and over Defendants in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: June 1, 2015                    Respectfully submitted,

By:   /s/ Patrick R. Costello
Patrick R. Costello
Senior Trial Counsel
Florida Bar No. 75034
Direct Dial: (305) 982-6380
E-mail: CostelloP@sec.gov
*Lead Attorney*
*Attorney To Be Noticed*

Trisha D. Sindler
Senior Counsel
Florida Bar No. 0773492
Telephone: (305) 982-6352
E-mail : FuchsT@sec.gov

**ATTORNEYS FOR PLAINTIFF**
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154